Good morning, Your Honors. My name is Caroline Livet from Federal Defenders of San Diego, and I represent the appellant, Jose Hernandez-Hernandez. Your Honors, I'd like to start by reading part of the government's reply brief in Gonzales-Sotelo. It is not the function of this district court to single-handedly destroy the statutorily provided for, attorney general-approved, U.S. attorney-implemented fast-track program. Its actions here threaten to do so. It is the government's function to destroy the judiciary's authority to impose sentences? It is the government's authority to offer the fast – to recommend the fast-track program. And who has authority to impose sentences? The judge, Your Honor. All right. So it's all well and good that there may be an agreement between the Department of Justice and the defense attorney with regard to a particular case. Why does that inhibit the judge from making his independent judgment as to the appropriate sentence to be imposed? The judge has the ultimate authority to make the final judgment, final sentence, but the district court cannot deny fast-track based on its philosophical disagreement with when it thinks fast-track is appropriate and when it thinks fast-track is not. Gonzales-Sotelo makes that clear. Well, then why would it be discretionary? If he can't say, I don't think fast-track is applicable here. This guy has lots of records. He's been deported and he's come back on the same day. And he's already said – I don't know if it's your case or the other defendant, but same issue. He's already said if you kick me out, I'm coming back anyway. And if he can't go against any kind of the fast-track determination that the government makes, where is the judge's discretion? Well, we know from Gonzales-Sotelo that the judge's exercise of discretion cannot be based on its policy disagreement with fast-track, and that's what this district judge has. What if the judges in these cases all say, hey, this guy's a recidivist. He's done it before. He's done it on many occasions. In one case, he's got a violent offense in the past. He's constantly being picked up. In one case, the sentence was as much as what they're wanting me to do in this case. Why aren't – why isn't that an independent basis other than the fact that – that – why does that show that he doesn't agree with fast-track, as opposed to he doesn't agree that fast-track is appropriate under the circumstances of this case? Well, there's two problems with that, Your Honor. The first problem is that this Court's case law is clear, that fast-track is not supposed to be based on the defendant's individual circumstances. In Benuelos-Rodriguez, this Court said that nothing about the Southern District's fast-track program lessens the severity of a defendant's conduct or makes his criminal history more sympathetic. Fast-track is all about the benefit that the government receives, and this sentencing reduction is just leverage so the government can get what it wants. The problem with denying fast-track in this way is that the district court never takes the benefits that the government receives into fast-track into consideration. So where are you in terms of complaining about the government's right under fast-track? You're the defendant in this case. Are you the proper person to complain about the – what the judge did to the Department of Justice's recommendation, or shouldn't the Justice Department be the one saying, hey, they're interfering with whatever rights we have under fast-track? Well, the government did take that very position in Gonzales-Sotelo, and the government can't have it both ways. This case is the other side of the same coin. In Gonzales-Sotelo – Why can't it have it both ways? Why can't it have some kind of rights because it's their program or whatever? And if that's something that the government has and is able to do, why does that necessarily mean that it's a defendant right? Well, in here, my client's rights were violated because he conferred a huge benefit on the government, and he never got the benefit of his bargain, all those benefits that he – So this benefit binds the court. I mean, the bargain made by the government and the defense attorney binds the court. Well, the guideline – under the guidelines, it's discretionary, but that exercise of discretion has to be – But discretionary but. I mean, either it's discretionary or it's not. Well, a court always has to exercise its discretion on the correct legal standard, and my argument here is that the district court did not use the correct legal standard when deciding whether fast track was warranted. So let's just back up a second. All three of these cases are Judge Byrne's cases. They are, and Judge Byrne was the judge in Gonzales-Sotelo as well. Right, and in Gonzales-Sotelo, our court vacated and remanded because there was evidence that Judge Byrne was not having a legitimate philosophical disagreement with the guidelines that was disagreeing with congressionally enacted law in the PROTECT Act. Do we have that same situation here? Yes, Your Honor. And what is the evidence that the same situation is here? Throughout the sentencing hearings, throughout all three sentencing hearings, the district court berated the government's decision to offer fast track as a matter of policy. In my case, he said the logic of offering fast track again when a guy has gotten it before and comes right back. I don't get that. So you're equating the government's discretionary policy, they don't even have to have this policy, with a congressional act? It is. Fast track is a congressionally mandated act as part of the PROTECT Act, and that's why fast track is so much different from every other departure. So can you please answer my question? I'm sorry, yes. Yes, just answer my question about what evidence is there that – well, there's two things. We vacated and remanded because Judge Byrne was impermissibly undermining a congressionally enacted law, which is part of the PROTECT Act. And then we also reversed, in the Central District, Judge Stephen Wilson because he had an announced policy against ever applying a fast track departure because he disagreed with the law as well. So we have now reversed two district court judges for undermining a congressional act. What I don't see in this record is a statement like Judge Wilson's that said, I'm never going to apply fast track, which means you're violating the defendant's right to an individualized sentencing determination. So what I'm looking for is, is there evidence that he is just not going to abide by what Congress has said? There is, Your Honor. At the very end of my sentencing hearing or in my sentencing hearing, he told me, maybe this is a wake-up call for you more than him because he's just passing through, but I can tell you I'm going to be looking at these cases individually and I'm not going to go along with this. And what Judge Byrne is not going to go along with is when defendants have received a fast track offer before or when they're repeat immigration offenders, he is not going to grant fast track again. That is his policy. That is his own philosophical thought of when fast track should be granted and when it shouldn't. And he is not deferential in any way, shape, or form to when the government thinks that fast track is appropriate. And he has to be. This Court's Chief Justice wisely stated in Redondo Lemus that the office of the prosecutor before the court while also acting under its general supervision. That's what the court is doing here. He is supervising the inner workings of the U.S. Attorney's Office. He's telling them when they should offer fast track, when they shouldn't based on his philosophical idea of when it's appropriate. And that's not his position. And, Your Honor, this is a huge problem. Your Honors, this is a huge problem in our district. Defendants are uninclined to enter fast track agreements in Judge Burns' courtroom. It means more trials in his courtroom, more appeals in his courtroom, more resources are spent, and more taxpayer money is wasted. What Judge Burns is doing in these cases undermines the very reason that our district implemented fast track in the first place and is really destroying the program just like the government was concerned about in Gonzales-Sotelo. Let me ask a couple of questions around . . . I mean, as a practical matter, can you have Judge Burns recused from this case on the grounds of bias against the fast track? I didn't request that in my papers. We would just be asking for a remand to the district judge and for him to grant the fast track departure based on the correct legal standard. You're painting a pretty bleak picture of this judge and what he does in these fast track recommended cases. Are you telling me that if it involves someone that's been deported in the past that he never goes along with it? Or are you saying that there's something wrong with him looking individually at these type of cases and making a determination? That's a pretty broad statement. I think it's both, Your Honor. He is looking at these defendants individually, which this court in Benuelos, Rodriguez, said that fast track is not supposed to be based on. They're individual circumstances. It's all about the benefit received to the government. And he is sort of making a blanket policy about when he thinks fast track is appropriate and when it isn't. And if someone is a repeat immigration offender, if someone has a handful of deportations, it's his own policy that fast track isn't appropriate. And again, that's supervising the U.S. attorney. That's telling them when fast track is appropriate or not. It's destroying their program. Let me ask you about a particular case, and we've got three of them today. I had one recently where it was a fast track case. And I had to scratch my head at the sentence because the person in question had been sentenced for unlawful reentry twice before, and the proposed sentence on this one was going to be lower than the sentences previously, which were obviously not successful in deterring the individual from coming back. And it's not the first time I've seen that. Okay. It's as a result of the application of the fast track policy. But as a judge, I sit here and look, in this case, not as a sentencing judge, as an appellate judge, but look and say, well, if he's not going to be stopped by a sentence of 12 months, exactly why do I think a sentence of six months is going to do the job? That's even worse than the definition of insanity about doing the same thing. And so that's what I see going on here. And how is that unreasonable as a judgment for a sentencing judge? I agree, Your Honor. I agree that, but in that case, what the judge should have done is grant the fast track departure, start with the fast track guidelines, and then based on his determination that the fast track sentencing guideline range is not going to sufficiently deter that defendant, very upwards. I think that that's the correct procedure in these cases. And the problem with doing it the other way and just picking a guideline sentence that doesn't include fast track is the judge is giving the defendant a non-fast track sentence and never, ever taking the benefits that the government receives from fast track into consideration. All of those, the benefits the government receives, those aren't considered under 355-3A. And that's what takes this case apart from Ellis and Vasquez-Cruz and Mohamed in those cases where you're looking at departures for cultural assimilation and overstatement of criminal history. Those are cases where it doesn't make sense to remand to the district court because the district court can correct the procedural error and then vary up under 355-3A to reach the same sentence. Here the district court cannot do that because under 355-3A, those fast track considerations, the benefit that the government receives, aren't taken into consideration. So the fact that the defendant complied with fast track is completely, completely lost. And there are a number of benefits. I have another case that I'm writing an opinion in right now on that. And it's a central district case. And another thing that the defendant gives up in the central district is he agrees to a three-year term of supervised release with a whole host of conditions. And if he reenters the country, one of those conditions is his probation is or supervised release is subject to revocation, in which case he goes back and serves a longer term, which makes the sentence and the deterrence, you know, a lot harsher. But also suffices under 3553 to act as another deterrent. And otherwise, if he didn't agree to that, then the guidelines advise against imposing supervised release for anyone who's otherwise going to be deported. So that's another kind of benefit, another insurance that's already built into the fast track. Is that provision also in the southern district fast track agreements? There's nothing about supervised release in particular. A lot of judges do impose supervised release. In fast track, there's a number of things that the defendant gives up in the southern district. The defendant waives indictment. That saves a grand jury from hearing the case, an agent from coming to court. The defendant's prohibited from filing any substantive pretrial motions. There's no 1326D motions. There's no hearings on those motions. The government doesn't have to respond. No motions in limine, no trials. We're very restricted on the arguments that we can make at sentencing under fast track. 1326D, is that the Clara attack? Yes. On the underlying deportation? Yeah. And under fast track, we're prohibited from making those motions. We're also very limited at sentencing. We can't ask for any variances under 3553A. We're only allowed to ask for departures under the sentencing guidelines. And we also give up our right to appeal in all but a handful of cases where the district court goes above the high end of the sentencing guidelines. So we give up, every single one of our clients gives up huge rights. And it benefits the government tremendously. They can serve so many resources and are able to effectively process all these illegal reentry cases in our district. How are the cases assigned in the southern district? Do you know that you have Judge Burns before you enter the fast track, or you enter the fast track and then you're later assigned? Yes. How it works is once we waive indictment as part of the fast track program, then we're assigned a district court judge. And then under the fast track agreement, we have usually about two weeks after we know who the district court judge is to decide if we're going to enter fast track or not. So are you considering, I don't know if you can answer this question, are you asking clients who have Judge Burns not to enter fast track? Absolutely. My entire office is. Absolutely. And is your entire office all of the federal defenders of San Diego? Yes. Okay. I think there's about 45 of us. Okay. So there's some time left. Do any of the other attorneys representing defendants wish to add? I'll just brief you. Thank you, Your Honors. Thank you. Your Honors, good morning. Good morning. Thomas Sims on behalf of Javier Lara Ventaria. I just want to go a little bit further with the problem that I think we all share with Judge Burns' policy to deny fast track. Essentially what we have here is that the judge has a philosophical disagreement with the fast track departure under 5K3.1, and we believe that that's incorrect, that that violates the separation of powers. I know that in my own case, I noted in the excerpt of record, the court indicated that the Cole Memorandum, which the court referenced at that time, binds the U.S. Attorney's Office, and we indicated to the court in our moving papers that we don't believe it binds the U.S. Attorney's Office. Rather, it gives them guidance. So I would also like to point out that with reference to my client, if the court had followed the recommendation of probation and the government, the guideline range would have been level nine, criminal history category five, which would have been 18 to 24 months. In my case, Judge Burns referenced that my client had received 18 months the last time around. He could have given 24 months in this case and still exceeded what my client got in the last case. Plus, we had noted and pointed out to Judge Burns that we were facing a supervised release revocation the very same day, that my client was facing additional time on top of whatever Judge Burns was going to give. That was by Judge Huff? Judge Huff. That's correct, Your Honor. And what incentive did he get from Judge Huff? She gave him 12 months concurrent, Your Honor. Okay. Your Honor, I just also want to point out, I think that Ms. Livid also pointed out as well, is that I want to carry this through to the logical conclusion. I think that the court should encourage fast track. I think that's what Congress intended by the PROTECT Act. It conserves resources. It allows the government to concentrate on the bigger cases, the RICO cases, rather than going to trial, you know, litigating motions, 1320-16 motions or whatever it would be. We know that we have a lot of money at stake in handling these cases. By conserving those resources, I believe that the government can then concentrate on the things that really matter. So you would follow Ms. Livid's suggestion that if the district court has a problem in any one case, that he should just go ahead and grant the fast track and then deviate from that on the basis of the fact? In other words, if we look at, if we let the tail wag the dog and look at whether this is substantially reasonable sentence, it would be very difficult to say that it's not. But we can't, you're saying, well, we shouldn't look at that. What we should do is say, well, the judge has this predisposition against the law and he has this predisposition against the government's authority, and he should go ahead and go along with it and then make some departures from it. So we, so what you're saying is that to the extent that we, the Ninth Circuit may have some law, that if you look at the substantive reasonableness of it and not conduct two different inquiries, that in this particular case, because it involves this fast track provision, that that kind of a procedural error is something that should always go back and let the district court re-sentence? Leon, I believe it was a procedural error on the part of Judge Burns. I think he looked at the individualized circumstances of my client when determining whether or not to grant the fast track. I think that's incorrect. I think that he should have looked only to see whether or not my client, and I guess the other clients as well, the other defendants rather, if they complied with the fast track requirements. And if they did, I believe that he should have granted the fast track. At that point, if he had believed that a variance upward was appropriate, so be it under 35-50. So it's a process. It's not the ultimate outcome. It's that there is some kind of violation in the actual, in the process. Correct. That is what you're complaining about. Yes, Your Honor. I have nothing else, Your Honor. Thank you. Thank you. Thank you very much, Your Honors. I'm here on behalf of Mr. Dominguez-Garcia. And I just, I think you've hit the nail exactly on the head. That's what our position is. That's what my position is, is that, and this is what distinguishes it from Ellis and Vasquez, is that because this is a congressionally mandated, warranted departure, and Your Honor is completely correct. This goes against the bedrock of what all judges feel. When you punish somebody for a crime, and he comes back and does the same crime, he should get more time. Everybody believes in it. It's the core of the judicial analysis. What makes it different here is that Congress has said this is a warranted departure. And if you employ this four-point departure in the cases, you're going to end up with a less sentence than the guy got the last time. So it's not the subject's decision. And that's not insanity? No, no, no. And that's not insanity?  But it's not insanity. But it's a congressionally mandated thing. So how do we analyze it? Well, what do you mean by congressionally mandated? Well, it's part of the Congress. You have to understand, Your Honor, that fast track was done by U.S. Attorney's Office in the early 90s without any congressional authority. It was just done because of the overload. Congress incorporated specifically the fast track into the PROTECT Act. But what's the meaning of mandated? Who's mandated to do what? I think the question here is discretion. Our position is that the discretion of the judge with respect to fast track is basically an analysis, did the government receive a benefit for this? Did the defendant comply with the fast track provisions? Make a clear rule of finding on that, and then you go on. And you're right. For this Court, this will aid the Ninth Circuit, this Court, because you'll be able to see when the judge disagrees with fast track, he will say in his – he'll have to give reasons under 3553 why that is a substantially unreasonable sentence, and he's going to impose a substantive reason. But they may be the same reasons. I mean, the very same reasons that underlie his disagreement with fast track in a particular case, won't they be the same reasons why he can't go along with a fast track sentence? I don't believe so. For example, Your Honor, this is – we are very crowded in the Southern District. Many times when it gets crowded, the government just gives 1325s, just gives misdemeanor dispositions, especially out in El Centro with a person who has as bad a record as my guy. He gets a 6-month sentence, right? The Court can't do anything about that. That's prosecutorial discretion. That's charge bargaining what they're doing. That's essentially what's going on here. The Court, if you read the records here, he's basically saying, the same as he said in West El, I disagree with the government's decision to grant fast track. This guy, my guy, has prior records. You shouldn't have granted the fast track. That's involving himself, the Court, in the discretion of the government. What's the basis for his objection? Ultimately, his objection is because it produces an unreasonable sentence. That's right. And that's something he has authority over. Absolutely. And all we're saying is that in this position, as opposed to Ellis and Vasquez, this Court should have that flushed out. In other words, instead of sending it back in the future, the Court will have that analysis right before it. In other words, it will have the fast track, the government using its discretion. Is that something we don't already know? I mean, I have it the version you don't like, but I can figure out from this what's driving Judge Burns. To tell him to go back instead of go from A to B to C, go to A to X to C, am I really going to learn anything I don't know now? No. It will clarify for all the courts, all the judges in the district, it will clarify that this is the procedure that they should follow. So you're equating this with cardi-procedural error. Exactly. That's what you're doing. You're saying he's supposed to calculate it correctly, give the government's discretion to get the benefit of the bargain, of the fast track. It already got it. Right. And the defendant has given up a substantial right in order that he's entitled to that. So you're saying it's procedural error and so he's. But he's pretty willing to give up this right. It's not like, I'm trying to figure out, you know. I had a friend of mine one time where the prosecutor argued that the defendant had a right to go to the penitentiary and get cured. And the defense attorney says he waived his right to go to the penitentiary. And I'm just wondering, what did you really. I don't see. You're saying the appeal rights. Right. Well, also, just you have to understand that the enormous time and energy that the government is saving. Because if the defendant doesn't agree to the fast track, that's four points. And the way the government oftentimes, this guy had said that he had papers he believed in, he had a long career, we have to order the A file. When you order the A file to see if there's a 1326D motion, two agents from the ICE have to be there with the file. The U.S. attorney has to be in the U.S. attorney's office with the file. I have to be there usually with my investigator going through this whole thing to decide if there is issues. This is all along the line how much time and energy of the government's resources are spent on these type of cases. And that is what the judge is not recognizing by interfering with that, by saying you made a mistake in getting this case. But if you're dealing with a recidivist, I mean, fast track makes perfect sense in some circumstances. But, and I'm not saying this is my own view, but it's not hard for me to understand the view of a judge who says, look, this guy's been back 13 times. We're not saving anything if we give him a sentence that's not going to discourage him from coming back again. We're just kicking the can down the road for the next time he comes down. And he can say exactly that in his 3553 analysis as to why he's upwardly departing for abearance. And what I'm saying, the clearest thing is here, look at my guy's case. Under the guidelines with fast track, it's 12 to 18. Under Judge Byrne's analysis, it's 24 to 30. So his upward departure from 30 to 36 is only six months. Now, my guy had a bad record, but he had some things going in his favor. He was mentally ill. He had an alcohol problem. He had worked here his whole life. He had his family here. He had come back immediately, as you're saying, but he had lived playing cards and stuff for three and a half years without causing any problem or causing a crime. So if the judge Byrne's wanted to go from 18 to 36 based upon the 3553A factors, he would have had to demonstrate to Your Honors an analysis of why that was. And he probably could have done it in this case easily by talking about the client's record, talking about how he demanded to come back. Those are all factors. And you would have that all before you. He had two prior convictions, got 24 months for each. Right. But it's important that he did not get fast track in either of those. And that's also the case. You're right. In that particular case, not just the case you drew, it's a piece of cake for a judge to say, gee, twice, got 24, came back 36. Sure, I can explain that. Then you can explain it. And this Court would have it. But the interesting thing there is he, in the record, disagrees with the government, what the government did in that case. Because in my guy's second case in front of Judge Thompson, he got two 1325s, which limited the judge's discretion to 30 months. Right. Judge Thompson, who's a tough censor, only gave my guy 24 months. Right. But the point is, what he was saying is he was saying you got a discount on that case, again interfering with the prosecutor's discretion in the prior case, putting his, his, what he thought was the correct position. And all I'm saying is if you accept our procedural analysis, in the future, this Court will have that, a much cleaner picture of what's going on and can analyze the Court's reasons, oftentimes completely legitimate, as to why he's opposing what he thinks is a substantially reasonable sentence. For example, in light of Gonzalo Sotelo, if in this case Judge Burns had granted the fast track, and then in his reasons, instead of giving 3553 reasons, says I'm giving a four-level upper departure because I disagree with the fast track discretion of the government in this case. And solely for that reason, I'm giving a four-level increase. And in addition to that, I'm giving a little more, another six months, because that would have only taken it to 30. Your Honors would have seen that, and my position is in light of Sotelo, that you would have said that was error. It was plain error for him to depart on another case because he disagreed with the prosecution session. Yes. Because under Kimbrough, you can disagree with the guidelines, but not with the congressional enactment. Right. So that's what I'm saying. I think that's the clearest way. If he had done that here, it would have been error. And so if Your Honors sends this back and says this is the correct procedure for dealing with the fast track analysis, we will all have a better idea. It will benefit everything. The government will be able to make its discretionary decisions. The defendant will have a much better understanding that his reliance in giving up all these rights won't be scuttled because of a policy decision with the judge. Because he's up there holding a bag once the judge says that. Right. The judge will be better off because he will know what he has to do and how he has to fill out his 3553 analysis to justify the upper departure that's going to be necessary to bring this into a reasonable sentence. And Your Honors will be better off because you'll have a much cleaner record to be able to determine the substantively reasonableness of that sentence. All right, counsel. Let's hear from the government. Who's the lead? Thank you very much. Thank you. Lead lawyer for government. Good morning, Your Honors. My name is Matthew Sutton. I'm representing the United States today. I briefed the case in Jose Hernandez-Hernandez, the second case on the docket. But I'm prepared to discuss some of the factual differences among these cases. And I want to start by answering Judge Wardlaw's question to Ms. Livett. Was there any evidence in the record that Judge Burns has a policy in these cases of unilaterally not giving fast track departures? I would point you to Pedro Dominguez Garcia, page 41. And in that excerpt at the bottom of the page, referencing, this was Mr. Donovan's case, he says, Mr. Donovan, in most of these cases, the great bulk of cases, I can't quantify it, but 99% of the time I grant that, referencing the fast track departure. The last case before you came up, and I granted it reluctantly because the guy had gotten it before. He had gotten minus 4, and he had upped it even though he'd committed the same. So there is no evidence in the record before the Court today in any of these cases that Judge Burns has a blanket policy of not granting fast track to these type of defendants. Instead, the record reflects in each of these cases that Judge Burns does exactly what the Ninth Circuit has instructed him to do, to conduct an individualized examination of each defendant, to highlight the concerns that are mentioned in 3553A, the need to promote deterrence, respect for the law. Ginsburg. Right. But individualized, the individualized aspect of sentencing comes in after you do the procedural calculation that's required by CARDI, right? Yes, Your Honor. So it is more properly part of the 3553 and not part of the acceptance or rejection of the fast track. Yes, Your Honor. But again, I would point this Court's attention to the precedence that the Ninth Congress did not say that fast track is mandatory. It's unlike a mandatory minimum, you know, in drug cases. It authorized fast track. They authorized it. And the language specifically that they directed the Sentencing Commission to put in the guidelines is that the Court may. And that language means something. It means it's may, it's not shall. And it allows the Court the discretion to fashion an individualized sentence. And that comes in because it is discretionary as long as it's not a blanket denial, then neither the government or the defendant has lost at least the discretion or the possibility that the district court will allow. Yes, Your Honor. And to elaborate on that point, that these sentences are reviewed on the deferential abuse of discretion standard. And I would submit in this case that abuse of discretion was not shown here. In fact, quite the opposite. Judge Burns clearly and thoroughly articulated each and every reason why he rejected fast track, not as a general policy, but for these specific defendants based on their own personal characteristics, their criminal history, their recidivism as immigration felons. So abuse of discretion, I think, would be a case where if a judge said, I'm not granting fast track because today is Tuesday. If there was an arbitrary reason, I think you could say, that's an abuse of discretion. That should be reversed. Or to say, I have a blanket policy. I disagree with the way Congress has authorized the fast track program. I will not give it in any case. I think under those circumstances, you know, the defense would have a better argument. In these three cases, what they come up against is Judge Burns does not, there's no evidence in the record that Judge Burns has that policy. In fact, all of the evidence, the transcripts in each of these sentencing hearings shows the exact opposite. And what kind of case falls into the category where he views the fast track credit as suspect? Exactly. I mean, can you identify which cases he goes after? So my understanding, and, you know, Judge Burns, I think, you know, there's no blanket policy. But I think some of the concerns that Judge Burns has are some of the factors that are addressed in the Cole Memorandum that direct the United States Attorney's Office to set up these fast track programs. We're talking about number of prior deportations and removals. We're talking about previous 1326 convictions. In my case, Mr. Hernandez had two prior 1326 convictions. And I know in the other cases, they're a similar type of background. There's also that the repeated nature of these incidents show that there's no effective deterrent by using fast track in these cases. And to shift gears here and for a second, talk about the benefit of the bargain. And that's something that my colleagues brought up on the other side. And I think they're kind of confusing what the benefit of the bargain here is. The benefit of the bargain is that the United States and the defense are both jointly recommending to Judge Burns, the sentencing court, that we believe fast track is appropriate. It's that unified front that is the benefit of the bargain they receive in exchange for giving up some of the rights that Ms. Leavitt talked about. It's not, it would never, the bargain is never that the United States has promised that the government, that you will get this sentence or that the United States can control the discretion of the sentencing judge. It's like a job recommendation. It doesn't get you the job, but you get someone influential and involved to write something favorable for your benefit. Exactly. And I think this court would take a very dim view if the United States' plea agreement in these fast track cases in the Southern District of California said we're going to guarantee the sentence you receive. You know, that's not how the law is set up. You can't do that. But let me just ask you something. Do you understand that there seems, there's a sense of injustice involved here that is causing these defense counsel to be so upset about this? Is that they perceive that their clients have complied with all the provisions, including giving up the indictment, and the government's getting all those little benefits in terms of not wasting its resources and being able to prosecute, you know, more serious cases. And so you walk down the line of things that they've given up, and they've given up all that before they walk into the courtroom to find out whether or not Judge Burns is going to, you know, approve the fast track and then depart separately. Do you agree that there seems to be a sense of injustice here? I would say this. I understand the defense counsel's concerns, but I think we have to take a step back and examine how the fast track program operates in the Southern District of California. There is not a decision to accept the fast track offer until a district court judge has been assigned to each case. And if you look at the transcripts in my case, Jose Hernandez-Hernandez, Judge Burns, you know, in a colloquy with Ms. LaVette said, you know, aren't you familiar that, you know, these are some of the concerns I have, and that I might not be likely to accept this deal. And did you advise your client about that? She acknowledged that she had. And in fact, Judge Burns offered Mr. Hernandez the opportunity to withdraw his guilty plea. He allowed that. And you tell us there's nothing in the record to show that he's got some kind of prejudice against the fast track. And now you're telling us that he warns defense counsel that he's got some kind of a prejudice against the defense counsel. No, and I want to clarify. I don't think there was any prejudice, but he said that in my case, that these were some of the concerns that he had, and that he had not made up his mind as a blanket policy. But these, going into these sentencing. He knows now he has to use the words individualized. And he knows now he can't say blanket policy. So it's, I mean, I don't want to cast any aspersion on Judge Burns. I'm sure he's doing, he's sentencing in exactly the way he thinks is right, and considering all those 3553A factors. But it, you know, it's, he's using the correct language, but perhaps exhibiting the same bias. I would disagree with that, Your Honor. I think the record in each of. I know you would disagree. I'm just saying that, you know, as each case comes down saying, no, you have to do individualized sentencing. He uses individualized sentencing. As the next case comes down, no, you can't have a blanket policy. He doesn't have a blanket policy. But my understanding of Judge Burns is, since he was the district court in Gonzalo Zotello, and in that case, this court directed reverse and remanded because they said Judge Burns had not made an individualized assessment in that case. I mean, I believe the record in all three cases show that Judge Burns is, in fact, making these individualized assessments. There's no evidence in the record to show otherwise. As a practical matter, if the Federal public defenders just decide, okay, every case assigned to Judge Burns is going to trial, how does that affect your office? The Southern District is prepared to litigate those cases, if that is the choice of the Federal Defender's Office in San Diego. Because Congress has authorized the fast track program, you know, as the court well knows, it's prosecutorial discretion, even whether to offer it in certain cases. So I think the confusion Based on your observation, you quoted us from the transcript in the Dominguez case that Judge Burns estimated that 99% of the time he lets that go forward. You and your colleagues have observed, is that a fair assessment? Yes, Your Honor. Absolutely. So it sounds like his complaint is not with the fast track program itself, but with the decision of your office to offer it in certain kinds of cases. I'd suggest whatever we wind up doing, it would be worthwhile for the office to try to ascertain where you're going to have a problem. Because it sounds like you already know where you're going to have a problem and revisit the question of whether that's the right case to offer a fast track. Because I share Judge Wardlaw's concern in the cases where once the defendant has been pulled in, you know, somebody who's been, who's facing what that defendant is facing will seize on any piece of meat he can. And if in fact you have reason to think there's a string tied to that piece of meat so you're going to pull it away, you're going to have the kind of bitter feelings and the sense of injustice that's left behind. No matter what we do, what we say about the form, the possibility is still going to be there, as we've talked about, of Judge Burns getting to the same result through a different means. That's not going to make the defendant feel like he's been any less justly or better treated. And so this kind of falls back as a practical matter, as everybody here tries to process these cases. If you know you're going to have a problem when you get a given kind of case in front of Judge Burns, you're going to make everybody's lives easier by not dangling the carrot in front of him to do what he's done so many times already. Yes, Your Honor. And I can certainly assure you that the United States Attorney's Office and the Southern District of California is well aware of this. And we are governed by the factors set out in the Cole Memorandum. Those are binding on our office. And we strive to implement that in every fast track case that comes through our door. Does your office have a concern that when you've made an offer for a fast track and you know Judge Burns is likely to reject that offer in this case, that there's any interference with the separation of powers? No, Your Honor, because I think separation of powers, kind of some of the concerns that my colleagues had raised, are not applicable in this circumstance. At no point has Judge Burns ever instructed our office to not offer a particular type of charge or to supervise how we negotiate and dispose of these cases. He has used in some of these cases, and he has used the reasoning that your office didn't comply with the requirements set forth in the Cole Memo. You don't find that intrusive? No, Your Honor, because I think a careful examination of the record is that Judge Burns is saying, when he's citing the Cole Memorandum, he says, I understand this is not binding on this court. But this memorandum captures some of the concerns that he has. It's just so bizarre that he was researching on Google and came across the Cole Memo, and now he's trying to hold your office to the conditions in the Cole Memo. He said that. But I would disagree that the fact that, or the suggestion that Judge Burns. Would you disagree? I mean, have you had this conversation with her? I have not had this conversation personally with her, but I can assure you as a representative of the United States Attorney's Office that we have no concern that Judge Burns is improperly influencing our procedural discretion. There's no evidence in the record of these three cases or any of the other fast track cases that I have personally handled that I have ever had that concern. Well, you're not making. I still have a problem with the defendant complaining about the separation of powers with the reference to a power that belongs to the Attorney General of the prosecutorial arm when they're not complaining about the separation of powers. Yes, Your Honor. I mean, I don't know whether you have a third party beneficiary claim to a separation of powers argument. I don't think so. It does seem to be an unusual claim, and it kind of goes back to, well, what is the bargain that the defendant receives? The defendant doesn't receive a binding promise from the United States that the judge will go along with its discretionary decision to grant that fast track recommendation. It, though it simply receives, is the ability that both parties will go before the sentencing judge and advocate for that as demonstrated by each of the record in these cases. The United States Attorney's. But is that a separation of powers question? Is that just, you just can't, you just can't. Congress has passed a law. Congress expects certain things, and Congress has set up certain policy. And as a judicial officer, you just can't willy-nilly, because of your own personal view, reject a congressional dictate or policy. I don't know where that has anything to do with separation of powers. I mean, whether it's prosecutorial or not or whoever, judges just can't do that. The law tells them you're going to do this or you're going to do this or you're going to consider this. And if you just dismiss it out of hand, you just don't have the authority to do it because the law says separately. I just don't see where separation of powers has anything to do with it if you're not complaining about it. Yes, Your Honor, and I would agree with that. And unless the Court has any further questions for me, either about Mr. Hernandez's case, kind of the factual circumstances, I'd be prepared to submit on behalf of the Court for these cases. Thank you. All right. Ms. Lovett? I don't know if we have any time for rebuttal. Yes, you do, actually. You have, I think, five minutes. Just real briefly, Your Honors. In response to Judge Benavides' question about separations of powers, that's certainly the position that the government took in Gonzales-Otello when it was their rights that were affected, not the defendant's rights. In their reply brief, they said in Gonzales-Otello that the decision to offer fast track constitutes a classic exercise of prosecutory discretion and is materially indistinguishable from other core prosecutorial decisions, such as deciding whether to charge a particular offense or whether to enter. That's right. That was their right. That was their discretion. That's something that belongs to them. And in Gonzales-Otello, the government's rights were violated because Judge Burns gave a fast track, a non-fast track defendant a fast track sentence and never took the benefits that the government received into consideration in fast track. And here, it's just the other side says the same thing. I know, but what the other side isn't complaining, I don't know what you're complaining is about a separation of powers. They definitely have a discretionary right to prosecution. That doesn't mean that you have a right to enforce a wrong that you perceive that the prosecution is suffering. Those are apples and oranges. I understand, Your Honor. To me, it's the other side of the same coin, and I think that. Well, it's not the same coin. Well, here, Mr. Hernandez's and my co-counsel's client's rights were violated because they conferred a benefit on the government by complying with fast track and they didn't receive fast track sentences. And Judge. That's not separation of powers. Separation of powers, just take that out of the vocabulary. Right. Of course. Of course, Your Honor. How about the empirical evidence? I mean, Judge Burns estimates 99% of the time he applies fast track. What's your observation? I'll hear from your colleagues, too. I suspect you all have views. I mean, that's certainly not the observation of federal defenders. That's certainly not my observation. So what percentage would you give? You're not held to it. Oh, gosh. I think maybe 50%. See, doesn't that make a difference? Because it does suggest that he says, okay, if fast track is offered up in a substantial number of cases, I'll apply it. Individually, where I don't think the result is right, I won't. But there doesn't have to be a blanket policy. There wasn't a blanket policy in Gonzales-Sotelo, and it was plain error for the court to decide. Well, the problem there was the impact it had on a sentence in a particular  The court determined that the bottom line result was incorrect. Indeed, I think it amounted to plain error in that case. I forget. It's been a while since I read it. In this case, it seemed to be an acknowledgment that we're talking in some respects about form rather than substance. Form can impact upon substance. But in the end, there's not disagreement that the district court has the discretion after the fast track calculation has been done as part of the 3553 factors to get to the same result that he's getting to this way. And so if it's something the judge is permitted to do in applying the 3553 factors, it's harder for me to understand why we should, as a matter of form, make him do it that way when, in fact, he does grant fast track credit in a substantial number of cases. Well, the problem is, is that these defendants were fast track defendants, and they should have received fast track sentences. They did not receive fast track sentences. They should have received sentences not just after fast track, but after 3553. Correct. And if we acknowledge that the judge is free to do what he did, if he goes a different way around the block, in the end, is there a substantive difference? Absolutely, Your Honor, because then the judge would be taking the benefits received by the government in fast track and all the rights that our clients give up into consideration, because those aren't considered under 3553A. The judge would be giving that four-level departure, starting in a lower sentence, and then if he decided the 3553A factors warranted an upward departure, then he would be free to do that. But he would be giving those defendants a fast track sentence. He did not give our fast track clients a fast track sentence. So your client was Hernandez, is that right? That's correct. And he got 24 months? He did. Would he care if he got a sentence that was 24 months that had fast track credit or a sentence that was 24 months that was reached by the 3553 factor? I mean, in the end, it's 24 months, and that's really all they care about. I think he would, Your Honor. I think he would because he would he gave up a lot of rights. He waived indictment. He waived time. He didn't file any motions. I filed not a single motion on his behalf. I was limited in what I could argue at sentencing. And he would get acknowledgment for the things that he gave up. So, yes, I do. So just one last question. So it was the Southern District that started the informal fast track program itself, right? It's probably a question better addressed to the government. Because I know that when Congress made it a more formal enactment, they said there were some districts that were doing this informally. I think the Southern District might have been the first district. I think it may have been. Certainly, maybe the district. Southern District, Western District of Texas. Maybe Texas. Texas also. Those border districts, just because we have such a huge volume of the immigration cases. I'm not sure if the Court has any other questions. One last. Yes. With respect to the reference to 99 percent. Also, I think to get into his percentage, because the reality is that most of these cases don't get here. Because, as you know, as part of the fast track, it's your waiving. That's why I posed the question. You're waiving the deal. We see, we have three cases today. They all fit this pattern. I don't know what the rest of the iceberg looks like. Well, the point is because you're giving up that substantial right, the defendant, to waive appeal as part of the fast track analysis. For example, as I said before, if he had given them 30 months, we wouldn't be here, even though he had departed, you know, 12 months from the guideline. We wouldn't even be here. I wouldn't be able to raise the argument because the client had given, had waived his right to appeal. So I think we're kind of guessing as to what Judge Burns does. But with respect to the specific reference in this case, the, there's on page 26, 34 of the exhibit record, the judge makes a reference to the Attorney General. Is this Dominguez? Yes, Dominguez. He makes a reference to the Attorney General eligibility for the program and basically disagrees and says it shouldn't have been given in this case. So that's, we've already discussed. But then with respect to the 99 percent cases, that is prefaced, prefaced by a disagreement where I'm saying that this is the, you know, the government's discretion. And we get into the discussion of importation of methamphetamine, where it says for years it was 38, then they added plus 2 to incur. And I made a sort of a humorous reference to that Congress wanted to encourage domestic production of methamphetamine. Sometimes in front of. You've got to find humor where you can. I had a pretty good idea the ship was going down. But then he says that plus 2 reflects a terrible drug that is, I think it's even worse than all the drugs. And so when he then says in most of those cases, the great book, I can't quantify it, I give it. Remember, fast track is also given in drug cases. So I think it's a little unclear what he's making that reference to. And so there we are. And also I think that has some insight into this analysis because the judges in drug cases almost always give fast track because it helps get the number down. Right? Whereas, and they never see those people again. They never see drug recidivists again because they don't recidivate. Whereas these people, 1326 people, they see all the time. And I'll just leave it at that. Thank you for your attention. All right. Thank you, counsel. Thank all counsel for an excellent argument. These three cases will be submitted.
judges: Benavides, WARDLAW, CLIFTON